JS 44   (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
AKANTHA SUSKO

**DEFENDANTS**
WEIDENHAMMER SYSTEMS CORPORATION

**(b)** County of Residence of First Listed Plaintiff: **CARBON**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: **BERKS**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Sidney L. Gold, Esquire - Sidney L. Gold & Assoc., P.C.
1835 Market St., Ste. 515, Phila, PA 19103  215-569-1999

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [x] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [x] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [x] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | [ ] 950 Constitutionality of State Statutes |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
TITLE VII, PHRA

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
150,000 IN EXCESS

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE: 12/30/2020

SIGNATURE OF ATTORNEY OF RECORD
Sidney L. Gold, Esquire
Digitally signed by Sidney L. Gold, Esquire
Date: 2020.12.30 13:53:17 -05'00'

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V. **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: __1250 W. 10th Street, Jim Thorpe, Pennsylvania 18229__

Address of Defendant: __935 Berkshire Boulevard, Wyomissing, Pennsylvania 19610__

Place of Accident, Incident or Transaction: __935 Berkshire Boulevard, Wyomissing, Pennsylvania 19610__

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when **Yes** is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes [ ]   No [✓]

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes [ ]   No [✓]

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes [ ]   No [✓]

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes [ ]   No [✓]

I certify that, to my knowledge, the within case [ ] is / [●] is not  related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __12/30/2020__   __/s/ Sidney L. Gold, Esq.__   __21374__
                        *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.  Federal Question Cases:**
1. [ ] Indemnity Contract, Marine Contract, and All Other Contracts
2. [ ] FELA
3. [ ] Jones Act-Personal Injury
4. [ ] Antitrust
5. [ ] Patent
6. [ ] Labor-Management Relations
7. [✓] Civil Rights
8. [ ] Habeas Corpus
9. [ ] Securities Act(s) Cases
10. [ ] Social Security Review Cases
11. [ ] All other Federal Question Cases
    *(Please specify):* _____

**B.  Diversity Jurisdiction Cases:**
1. [ ] Insurance Contract and Other Contracts
2. [ ] Airplane Personal Injury
3. [ ] Assault, Defamation
4. [ ] Marine Personal Injury
5. [ ] Motor Vehicle Personal Injury
6. [ ] Other Personal Injury *(Please specify):* _____
7. [ ] Products Liability
8. [ ] Products Liability – Asbestos
9. [ ] All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, __SIDNEY L. GOLD, ESQUIRE__, counsel of record *or* pro se plaintiff, do hereby certify:

[✓] Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

[✓] Relief other than monetary damages is sought.

DATE: __12/30/2020__   __/s/ Sidney L. Gold, Esq.__   __21374__
                        *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| AKANTHA SUSKO | : | CIVIL ACTION |
| v. | : | |
| WEIDENHAMMER SYSTEMS CORPORATION | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (☑)

| | | |
|---|---|---|
| 12/30/2020 | /s/ Sidney L. Gold, Esq. | PLAINTIFF |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 569-1999 | (215) 569-3870 | sgold@discrimlaw.net |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**Civil Justice Expense and Delay Reduction Plan**
**Section 1:03 - Assignment to a Management Track**

(a) The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b) In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management. In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c) The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d) Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e) Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

**SPECIAL MANAGEMENT CASE ASSIGNMENTS**
**(See §1.02 (e) Management Track Definitions of the**
**Civil Justice Expense and Delay Reduction Plan)**

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation. The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985. This term is intended to include cases that present unusual problems and require extraordinary treatment. See §0.1 of the first manual. Cases may require special or intense management by the court due to one or more of the following factors: (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition. It may include two or more related cases. Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues. See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AKANTHA SUSKO, | : | |
| *Plaintiff,* | : | CIVIL ACTION NO.: |
| | : | |
| vs. | : | |
| | : | |
| WEIDENHAMMER SYSTEMS CORPORATION, | : | |
| | : | |
| *Defendant.* | : | |

**COMPLAINT AND JURY DEMAND**

**I.   PRELIMINARY STATEMENT:**

1. This is an action for an award of damages, attorneys' fees, and other relief on behalf of the Plaintiff, Akantha Susko ("Plaintiff Susko"), a former employee of the Defendant, Weidenhammer Systems Corporation ("Defendant"), who has been harmed by the Defendant's discriminatory and retaliatory employment practices.

2. This action is brought under Title VII of the Civil Rights Act of 1964 and 1991, as amended, 42 U.S.C. §2000(e), et seq. ("Title VII"), and the Pennsylvania Human Relations Act, 43 P.S. §951, et seq. ("PHRA").

**II.   JURISDICTION AND VENUE:**

3. The jurisdiction of this Court is invoked, and venue is proper in this district, pursuant to 28 U.S.C. §1331 and §1391 as Plaintiff Susko's claims are substantively based on Title VII.

4. The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1367 to consider Plaintiff Susko's claims arising under the PHRA.

5. All conditions precedent to the institution of this suit have been fulfilled and Plaintiff Susko has satisfied all other jurisdictional prerequisites to the maintenance of this

1

action. On October 16, 2020, a Notice of Right to Sue was issued by the United States Equal Employment Opportunity Commission ("EEOC") and this action has been filed within ninety (90) days of receipt of said notice.

### III. PARTIES:

6. Plaintiff, Akantha Susko ("Plaintiff Susko"), is an adult individual and citizen of the Commonwealth of Pennsylvania, residing therein at 1250 W. 10th Street, Jim Thorpe, Pennsylvania 18229.

7. Defendant, Weidenhammer Systems Corporation ("Defendant"), is a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania, maintaining a place of business therein located at 935 Berkshire Boulevard, Wyomissing, Pennsylvania 19610.

8. At all times relevant hereto, Defendant was acting through its agents, servants, and employees, who were acting within the scope of their authority, course of employment, and under the direct control of the Defendant.

9. At all times material herein, the Defendant is and has been a "person" and an "employer" as defined under Title VII and the PHRA, and is accordingly subject to the provisions of each said Act.

### IV. STATEMENT OF FACTS:

10. Plaintiff Susko, a female, was employed by the Defendant from on or about February 13, 2018 until on or about September 19, 2018, the date of her unlawful termination.

11. Throughout the duration of her employment with Defendant, Plaintiff Susko held the title of Account Executive and reported to Gene Farro ("Farro"), Sales Manager. At all times, Plaintiff Susko performed her responsibilities in a diligent and competent manner.

12. By way of background, throughout the entirety of Plaintiff Susko's employment, Defendant employed few women in positions of leadership or management.

13. Upon the commencement of Plaintiff Susko's employment, the Defendant assigned Plaintiff Susko to the Lehigh Valley sales territory. Thereafter, the Defendant began subjecting Plaintiff Susko to discrimination based on her sex.

14. By way of example, shortly after her hire, Plaintiff Susko began scheduling meetings with various departments within Defendant to learn more about the company and the specific role of each department. Said meetings were often dominated by the male heads of the departments who demonstrated very little interest in Plaintiff Susko or her success with Defendant.

15. Moreover, several employees, including Curtis Johnson ("Johnson") and Jeremy Jones ("Jones") insinuated Plaintiff Susko would have difficulty working under Farro and instructed her to "be careful" with him. When Plaintiff Susko reached out to Jody Pillar ("Pillar"), Sales Manager, for tips and suggestions on how best to work with Farro in such a male dominated culture, Pillar shrugged off Plaintiff Susko's concerns.

16. In or about late February 2018, Plaintiff Susko was sharing suggestions and ideas during an office meeting when Mark Warner ("Warner"), Customer Experience Officer, interrupted Plaintiff Susko and stated sarcastically, "honey, good luck," thereby patronizing Plaintiff Susko.

17. Thereafter, in or about March of 2018, the Defendant held a "Commercial Kickoff" event during which Defendant's leadership team presented sales initiatives and goals for the upcoming year. During said event, Johnson presented a PowerPoint presentation depicting male athletes and containing sports analogies. Johnson's presentation was so obviously

geared toward male employees that Pam McDonnald ("McDonnald") shouted "where are the women?"

18. During the same event, Gunars Foldats ("Foldats"), Development Lead, and Brenda Bittinger ("Bittinger"), Designer, conducted a joint presentation. At the start of said presentation, Foldats designated Bittinger the sole duty of manning the "clicker" and changing the slides while Foldat spoke.

19. Shortly after said event, Plaintiff Susko learned that Defendant had delegated two major accounts in her sales territory to Brian Williams ("Williams"), a newly hired Account Executive. When Plaintiff Susko requested an explanation for said decision, Farro merely instructed Plaintiff Susko not to worry about it.

20. In or about May of 2018, during her first quarterly sales meeting, Farro provided Plaintiff Susko with positive feedback regarding her performance and instructed her to "keep doing what you're doing." Farro additionally informed Plaintiff Susko that Chuck Zwicker ("Zwicker"), Senior Vice President, was impressed with her email campaigns.

21. Later the same month, Plaintiff Susko reached out to McDonnald to discuss her experiences and employment with Defendant. When Plaintiff Susko asked McDonnald how she was, McDonnald responded, "I'm a woman that works at Weidenhammer, how do you think I am?" thereby expressing her dissatisfaction with Defendant's discriminatory treatment of woman.

22. During the course of the aforesaid conversation between Plaintiff Susko and McDonnald, and during continuing conversations, McDonnald informed Plaintiff Susko that Defendant regularly passed over well qualified women for promotions to leadership and management positions in favor of less qualified males. McDonnald also told Plaintiff Susko that

she had once raised her concerns with Zwicker, who responded that he did not "want to hear that shit."

23. Moreover, Plaintiff Susko learned from Jones that prior to Plaintiff Susko's hire, Farro micromanaged and harassed Jen Gober ("Gober") in an effort to effectuate her resignation because she required a space to pump breast milk during the workday. Ultimately, Farro succeeded by placing Gober on an unjustified performance improvement plan, which caused Gober to resign.

24. In or about July of 2018, Plaintiff Susko learned that two renewing accounts within her sales territory worth approximately $63,000 had been resigned to Williams, and that another renewing account in her territory worth approximately $100,000 was also being reassigned without explanation.

25. On or about July 12, 2018, Plaintiff Susko participated in a second quarterly sales meeting with Farro, Zwicker, and Pillar. During said meeting, Plaintiff Susko presented her account development and achievements, sales figures, and pipeline figures. Despite Plaintiff Susko's success, Zwicker and Farro expressed dissatisfaction with Plaintiff Susko's sales performance. When Plaintiff Susko again questioned why accounts within her territory had been delegated to Williams, Zwicker responded in a bullying manner and threatened to replace Plaintiff Susko in her territory.

26. Shortly thereafter, on or about July 16, 2018, Plaintiff Susko met with Farro to discuss her discomfort and dissatisfaction with the aforesaid meeting on July 12, 2018. In response, Farro laughed at Plaintiff Susko and chided her for raising concerns relating to the reassignment of accounts within her territory. Farro further accused Plaintiff Susko of "looking for a hand out" and deflected Plaintiff Susko's questions regarding territory assignment.

27. Following her conversation with Farro, Plaintiff Susko compared her closed sales and pipeline reports with those of Williams and learned that her figures were almost identical to those of Williams. Said information caused Plaintiff Susko to further question why Defendant awarded accounts to Williams rather than her.

28. Several days thereafter, Jones notified Plaintiff Susko that Farro had arbitrarily prohibited her from completing a response to a request for proposal and making a sales pitch to an account. Jones specifically stated that Farro was "digging his heels in" without providing any explanation.

29. Moreover, John Schleh ("Schleh") noted to Plaintiff Susko that he felt it was strange that Farro only highlighted the accomplishments of male Account Executives during sales meetings despite Plaintiff Susko's overwhelmingly positive feedback from Defendant's marketing department and consulting group.

30. Significantly, on or about August 8, 2018, Plaintiff Susko learned from Skylin Renno, a former Account Executive, that Defendant had recently offered Jacob Henne, a male, a salary of $65,000 per year to fill an Account Executive position, although Plaintiff Susko earned only $50,000 per year.

31. On or about August 10, 2018, Plaintiff Susko participated in a call with Farro to discuss strategies to uncover potential accounts and increase sales revenue. During said call, Plaintiff Susko again questioned Defendant's policies regarding account assignment. Not only did Farro decline to provide Plaintiff Susko with any suggestions for continued success, but he also demanded that she "let go" any concerns she had regarding account assignment.

32. Thereafter, on or about August 17, 2018, Plaintiff Susko and Farro held a follow up meeting to discuss their call the previous week. During said meeting, Plaintiff Susko informed

Farro that she needed to be able to trust that she would be treated fairly based upon the work she was doing and her expertise, and expressed her concern that she was not being treated fairly in terms of compensation provided to Williams, her male counterpart.

33. As no corrective action occurred, on or about September 7, 2018, Plaintiff Susko registered another complaint of sex discrimination with Stacey Spinka ("Spinka"), Human Resources Director. In response, Spinka acknowledged that "things certainly could have been handled better" and noted that Farro had "chinks in his armor." Spinka assured Plaintiff Susko that she would conduct an investigation into her allegations.

34. Approximately one week thereafter, on or about September 14, 2018, Plaintiff Susko inquired as to the status of Spinka's investigation, however Spinka advised Plaintiff Susko that she had not had time to begin the same.

35. In a further act of discrimination, on or about September 17, 2018, Farro delegated yet another account in Plaintiff Susko's sales territory to Williams. When Plaintiff Susko attempted to discuss the same, Farro became agitated and began interrogating Plaintiff Susko's regarding her arrival time.

36. Immediately thereafter, Plaintiff Susko telephoned Spinka and relayed Farro's hostile and intimidating conduct. In response, Spinka stated dismissively "[Farro] can manage however he wants," and noted that it appeared Plaintiff Susko's relationship with Farro would not improve.

37. On or about September 19, 2018, in a blatant act of retaliation, Defendant terminated Plaintiff Susko's employment, allegedly as a result of a "misalignment of expectations.

38. Plaintiff Susko believes and avers that Defendant's articulated reason for the termination of her employment was pretextual that she was actually terminated based on her sex (female) and/or in retaliation for opposing unlawful sex discrimination in the workplace.

## COUNT I
### (Title VII - Sex Discrimination, Retaliation)
### Plaintiff Susko v. Defendant

39. Plaintiff Susko incorporates by reference paragraphs 1 through 38 of her Complaint as though fully set forth at length herein.

40. The actions of Defendant, through its agents, servants and employees, in subjecting Plaintiff Susko to discrimination based on her sex, and retaliation for opposing discrimination in the workplace, ultimately resulting in the termination of her employment, constituted violations of Title VII.

41. As a direct result of the aforesaid unlawful discriminatory and retaliatory employment practices engaged in by Defendant in violation of Title VII, Plaintiff Susko sustained permanent and irreparable harm, resulting in the loss of her employment, which caused her to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay and interest due thereon.

42. As a further direct result of the aforesaid unlawful discriminatory and retaliatory practices engaged in by Defendant in violation of Title VII, Plaintiff Susko suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## COUNT II
### (PHRA - Sex Discrimination, Retaliation)
### Plaintiff Susko v. Defendant

43. Plaintiff Susko incorporates by reference paragraphs 1 through 42 of her Complaint as though fully set forth at length herein.

44. The actions of the Defendant, through its agents, servants and employees, in subjecting Plaintiff Susko to discrimination based on her sex, and retaliation for opposing discrimination in the workplace, ultimately resulting in the termination of her employment, constituted violations of the PHRA.

45. As a direct result of the aforesaid unlawful discriminatory and retaliatory employment practices engaged in by the Defendant in violation of the PHRA, Plaintiff Susko sustained permanent and irreparable harm, resulting in the loss of her employment, which caused her to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay and interest due thereon.

46. As a further direct result of the aforesaid unlawful discriminatory and retaliatory employment practices engaged in by Defendant in violation of the PHRA, Plaintiff Susko suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## **PRAYER FOR RELIEF**

47. Plaintiff Susko incorporates by reference paragraphs 1 through 46 of her Complaint as though fully set forth at length herein.

**WHEREFORE**, Plaintiff Susko requests that this Court enter judgment in her favor and against the Defendant, and order that:

a. Defendant compensate Plaintiff Susko with a rate of pay and other benefits and emoluments of employment to which she would have been entitled had she not been subjected to unlawful discrimination and retaliation;

b. Defendant compensate Plaintiff Susko with an award of front pay, if appropriate;

  c. Defendant pay Plaintiff Susko punitive damages, compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses as allowable;

  d. Defendant pay to Plaintiff Susko pre- and post- judgment interest, costs of suit and attorney and expert witness fees as allowed by law;

  e. the Court award such other relief as is deemed just and proper.

## JURY DEMAND

Plaintiff Susko demands trial by jury.

        SIDNEY L. GOLD & ASSOC., P.C.

    By: /s/ Sidney L. Gold, Esquire
       SIDNEY L. GOLD, ESQUIRE
       I.D. NO.: 21374
       1835 Market Street, Ste. 515
       Philadelphia, PA 19103
       215.569.1999
       Attorneys for Plaintiff

DATED: December 30, 2020

## VERIFICATION

I hereby verify that the statements contained in this **Complaint** are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of Title 18 Pa. C.S.A. §4904, relating to unsworn falsification to authorities.

DATE: 12/30/2020

*Akantha Susko*
AKANTHA SUSKO, PLAINTIFF