UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

AKANTHA SUSKO,                          :
      Plaintiff,                       :
                                       :
    v.                                   :   No. 5:20-cv-06543
                                       :
WEIDENHAMMER SYSTEMS CORP.,              :
      Defendant.                       :

_____

**O P I N I O N**
**Motion to Dismiss Amended Complaint, ECF No. 9 - Granted**

**Joseph F. Leeson, Jr.**                                    **June 16, 2021**
**United States District Judge**

## I.  INTRODUCTION

This case involves the firing of Plaintiff Akantha Susko by her employer, Defendant Weidenhammer Systems Corporation allegedly based on her sex. Susko filed suit in this Court under 28 U.S.C. § 1331 and §1391 because her claims are substantively based on Title VII. Susko alleges Weidenhammer discriminated against her because of her gender and took retaliatory actions against her after she complained. Weidenhammer moves to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth before, the Motion to Dismiss is granted.

## II.  BACKGROUND

The Amended Complaint alleges as follows:

On February 13, 2018, Susko began working for Weidenhammer as an account executive. *See* Am. Compl. 2, ECF No. 7. In this capacity, Susko reported directly to Sales

Manager Gene Farro. *Id.* As an account executive, Susko oversaw the consultative sales process, identified potential accounts, facilitated meetings with internal subject matter experts, and managed account relationships. *Id.* at 3. Susko was assigned the Lehigh Valley sales territory. *Id.*

Shortly after Susko was hired, several colleagues, including the Vice President of Creative Services and the Director of Interactive and Marketing, expressed concern that Susko would have trouble working under Farro and instructed her to "be careful" with him. *Id.* at 4. They informed Susko that although they preferred Susko for her position during the interview process, Farro insisted that Weidenhammer extend the job offer to a different candidate who was male. *Id.* They explained that only after that candidate turned down the offer did Farro reluctantly agree to hire Susko. *Id.*

Throughout all of Susko's employment, only two of the twelve account executives employed by Weidenhammer were women.[1] *Id.* at 3. During her time with Weidenhammer, Susko began scheduling meetings with employees in other departments to learn more about the company. *Id.* In each of these meetings Susko claims the male department heads "dominated the conversation." *Id.* Susko further claims that the department heads demonstrated little interested in her success. *Id.* at 4.  In one instance, Susko met with Weidenhammer's Customer Experience Officer to learn more about his role in the company and ask about any advice he had to help her succeed. *Id.* During this conversation, the Customer Experience Officer interrupted Susko and stated sarcastically, "honey, good luck." *Id.*

A month into working for Weidenhammer, Susko attended a "Commercial Kickoff" event during which the company's leadership presented sales initiatives and goals for the

---

[1]     Susko claims that Weidenhammer "employed only two women in leadership or management roles within the company." Am. Compl. 3. However, Susko fails to allege how many leadership or management roles exist at Weidenhammer.

upcoming year. *Id.* During this event, there was a PowerPoint presentation containing sports analogies. *Id.* Despite including images of male athletes, no female athletes were depicted. *Id.* A female account executive noticed the lack of female representation and shouted, "where are the women?" *Id.* at 4–5.

During this same event, the male Development Lead and a female Designer conducted a joint presentation. *Id.* at 5. The male Development Lead spoke during the presentation and instructed the female Designer to man the "clicker." *Id.* Susko alleges that the two employees shared equal responsibility for the content of the presentation. *Id.* Yet the female designer did not have a speaking role during the presentation. *Id.*

Shortly after the kickoff event, Susko learned that Weidenhammer had delegated two major accounts in her sales territory to Brian Williams, a newly hired account executive. *Id.* When Susko asked for an explanation, Farro told Susko not to worry about it. *Id.* Several months later in May 2018, Farro provided Susko with positive feedback on her performance and instructed her to "keep doing what you're doing." *Id.* Additionally, Farro informed Susko that Chad Zwicker, Senior Vice President, was impressed by a project she worked on. *Id.*

Later that month, Susko contacted the other female account executive to discuss her coworker's experiences working for Weidenhammer. *Id.* Susko began the conversation by asking her coworker how she was doing. The coworker responded stating, "I'm a woman that works at Weidenhammer, how do you think I am?" *Id.* The coworker informed Susko that Weidenhammer regularly passed over well-qualified women for promotions to leadership and management positions in favor of less-qualified men. *Id.* at 5–6. The coworker also told Susko that when the coworker raised concerns, her manager responded by saying he did not "want to hear that shit." *Id.* at 6.

Similarly, Susko learned from another coworker that, to bring about a female employee's resignation, Farro heavily micromanaged her. Susko alleges that Farro did this because the former employee required a space to pump breast milk during the workday. *Id.*

Several months later, Susko learned that two renewing accounts within her sales territory worth about $63,000 had been reassigned to Williams and that another renewing account in her territory worth about $100,000 was also being reassigned. *Id.* Farro did not reassign accounts within the territories of any male account executives.[2] *Id.*

Shortly after learning more of her accounts had been reassigned, Susko participated in a quarterly sales meeting with Farro and Zwicker. *Id.* During this meeting, Susko presented her account developments and achievements, sales figures, and pipeline figures. *Id.* Additionally, Susko questioned, for the second time, why accounts in her territory were being delegated to Williams. *Id.* In response, Zwicker became agitated and threatened to replace Susko in her territory. *Id.* At this meeting, Zwicker and Farro expressed dissatisfaction with Susko's sales performance. *Id.*

The next day Susko met with Farro to discuss her dissatisfaction with the previous meeting. *Id.* at 7. Farro laughed and chided Susko for raising concerns relating to the reassignment of accounts. Farro further accused Susko of "looking for a handout." *Id.* Following this meeting, Susko compared her closed sales and pipeline reports with those of Williams and learned that her figures were almost identical to Williams, and they were both preforming satisfactory. *Id.*

---

[2]    In the Amended Complaint, Susko only lists these individuals' names and shared job title. No further facts or information was pled about these male employee's respective backgrounds, experiences, supervisors, job responsibilities, or sales territories. Am. Compl. 6.

Several days later, a coworker notified Susko that Farro had prohibited her from completing a response to a request for a proposal and from making a sales pitch to an account. *Id.* The coworker specifically stated that Farro was "digging his heels in." *Id.* Additionally, a male account executive noted to Susko that it was strange Farro only highlighted the accomplishments of male account executives during sales meetings despite Susko's positive feedback from the marketing department and consulting group. *Id.*

The next month Susko learned from a former co-worker that Weidenhammer had recently offered a male applicant a salary of $65,000 per year to fill an account executive position while Susko earned only $50,000 per year. *Id.*

Several days later, Susko met with Farro to discuss strategies to uncover potential accounts and increase sales revenue. *Id.* at 8. During this call, Susko questioned Weidenhammer's policies about account reassignments. *Id.* Farro demanded that Susko "let go" any concerns she had about account assignment. *Id.*

The next day Farro held a follow up meeting to further discuss sales revenue. *Id.* During this meeting, Susko informed Farro that she "needed to be able to trust that she would be treated fairly based upon the work she was doing and her expertise." *Id.* at 8. She also expressed concern that she was not being treated fairly in terms of compensation provided to her male counterpart, Williams. *Id.* No actions were taken to address Susko's complaints. *Id.*

On September 7, 2018, Susko registered a formal complaint of sex discrimination with Weidenhammer's Human Resources Department. Susko specifically informed the department that Farro treated similarly situated male account executives preferentially and that she believed Farro allocated accounts to Account Executives in a discriminatory and disparate manner. Susko further advised that Farro had reassigned many accounts within Susko's territory to Williams, a

male colleague, without explanation. *Id.* The Human Resources Director acknowledged that "things certainly could have been handled better" and noted that Farro has "chinks in his armor." *Id.* The Director informed Susko that Human Resources would investigate her allegations, including interviewing Farro and Zwicker. *Id.* A week later, Susko inquired into the status of the investigation and was informed that Human Resources had not had time to begin the process. *Id.* at 9.

On September 17, 2018, Farro delegated another account in Susko's sales territory to Williams. *Id.* When Susko tried to discuss this change with Farro, he became agitated and began questioning Susko about her arrival time. *Id.* Two days later, Farro fired Susko claiming it resulted from "misalignment of expectations." *Id.*

On December 30, 2020, Susko filed the above-captioned alleging discriminatory and retaliatory employment practices against Weidenhammer and seeking an award of damages, attorney's fees  and other relief. *Id.* at 1. The action was brought under Title VII of the Civil Rights Act of 1964 and 1991, as amended, 42 U.S.C. § 2000(e), *et seq.* ("Title VII"), and the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* ("PHRA"). *Id.* Weidenhammer moved to dismiss Susko's Complaint under Federal Rule of Civil Procedure 12(b)(6) alleging the Complaint failed to state a claim upon which relief can be granted. *See* ECF No. 6.

On March 15, 2021, before the Court had an opportunity to rule on the motion, Susko filed an Amended Complaint. *See* Am. Compl. On March 29, 2021, Weidenhammer moved to dismiss Susko's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). *See* Mot., ECF No. 9.  The matter has been fully briefed and is ready for disposition.  *See* ECF Nos. 9-11.

## III.    LEGAL STANDARDS

### A.    Motion to Dismiss – Review of Applicable Law

Under Rule 12(b)(6), the court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* As the Supreme Court has observed, "(explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Additionally, "a document integral to or explicitly relied upon in the complaint may be considered." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations omitted). The defendant bears the burden of proving that a plaintiff has failed to state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

B.      **Title VII, Discrimination – Review of Applicable Law**

Federal law prohibits employment discrimination based on race, color, religion, sex, national origin, age, and disability. *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d Cir. 2015). "The central focus in a discrimination case is "whether the employer is treating 'some people less favorably than others because of their race, color, religion, sex, or national origin.'" *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)). Disparate treatment claims brought under Title VII are analyzed using the three-step framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Rabinowitz v. AmeriGas Partners, L.P.*, 252 F. App'x 524, 527 (3d Cir. 2007). "Under the McDonnell Douglas paradigm, an employee must first establish a prima facie case of discrimination, after which the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment decision." *Fasold v. Justice*, 409 F.3d 178, 184 (3d Cir. 2005). To establish a prima facie case of employment discrimination, a plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802; *see also Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003).

The Third Circuit has "defined 'an adverse employment action' under Title VII as an action by an employer that is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004) (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)). "If the employer articulates one or more such reasons, the aggrieved employee must then proffer evidence that is sufficient to allow a reasonable finder of fact to find by a preponderance of the

evidence that the employer's proffered reasons are false or pretextual." *Id.* "It is important to note that although the burden of production may shift during the McDonnell Douglas inquiry, the ultimate burden of persuading the trier of fact that the [employer] intentionally discriminated against the [employee] remains at all times with the [employee]." *Id. See also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993) (explaining that once the plaintiff establishes a prima facie case, the law creates a "presumption" of unlawful discrimination, which is rebutted if the employer articulates a legitimate nondiscriminatory explanation for the employer's action, but the "presumption does not shift the burden of proof, and ignores our repeated admonition that the Title VII plaintiff at all times bears the ultimate burden of persuasion").

## C.    Title VII, Retaliation – Review of Applicable Law

"To establish a prima facie case of retaliation under Title VII and the PHRA,[3] a plaintiff must show that: '(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action.'" *Salvato v. SEPTA*, 658 F. App'x 52, 56 (3d Cir. 2016) (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)); *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006).

Pursuant to the first element, a report to a superior may constitute protected activity where discrimination is specifically alleged in the verbal or written report. *LeBlanc v. Hill Sch.*, No. 14-1675, 2015 WL 144135, at *14 (E.D. Pa. Jan. 12, 2015) (citing *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995)); *see also Moore*, 461 F.3d at 341 (stating that the

---

[3]     *See Boykins v. SEPTA*, No. 17-1980, 2018 WL 460652, at *2, *6 (3d Cir. 2018) (analyzing claims under Title VII and the PHRA is the same).

employee must have a good faith, reasonable belief that the activity complained of is unlawful (citing *Clark Cnty v. Breeden*, 532 U.S. 268, 271 (2001))).

As to the second element, a plaintiff must show that "a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Moore*, 461 F.3d at 341 (citing *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)); *McNair v. Home Depot*, No. 01-3173, 2002 U.S. Dist. LEXIS 11844, at *1-3 (E.D. Pa. Jan. 10, 2002) (holding that the failure to accommodate schedule changes which others did not receive is not materially adverse action for the purpose of a PHRA retaliation claim).

Finally, a plaintiff must show a causal connection between the protected activity and the retaliatory act. *Moore,* 461 F.3d at 341-42. Absent direct evidence, a plaintiff may establish the requisite causal connection by proving "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *Jensen v. Potter*, 435 F.3d 444, 450 (3d Cir. 2006). A plaintiff may also support a causal connection by showing that the employer gave inconsistent testimony or inconsistent reasons for terminating the employee. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000). Because there is no single, definite way of showing causation, the court must look at the evidence "as a whole" to determine whether retaliation has been sufficiently pled. *See Jensen*, 435 F.3d at 450 (citing *Farrell*, 206 F.3d at 280-81).

## IV.    ANALYSIS

### A.    Title VII – Discrimination Claim

To successfully bring a claim for discrimination, Susko must allege sufficient facts to establish the four elements of a prima facie case outlines in *McDonnell Douglas*. *See McDonnell Douglas Corp.*, 411 U.S. at 802

First, Susko must assert that she is a member of protect class under Title VII. *See id*. The Supreme Court of the United States has explained that "the impetus for Title VII's prohibition of sex discrimination was to protect women." *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1774 (2020). For this reason, courts have consistently held that being a woman qualifies someone as a member of a protected class. *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006) (holding that the Plaintiff, as a woman, was a member of a protected class—"sex" under Title VII). Susko is a woman alleging discrimination under Title VII's prohibition against discrimination based on sex. As a result, the first element of the *McDonnell Douglas* standard is met.

Second, Susko must allege that she was qualified for the position. *See McDonnell Douglas Corp.*, 411 U.S. at 802. The Third Circuit has held that an objective, rather than subjective, standard should be used to determine whether a Plaintiff's qualifications are enough to establish a prima facie case. *Robinson v. Matthews Int'l Corp.*, 2009 U.S. Dist. LEXIS 23423 *29-30 (W.D. Pa. Mar. 20, 2009) (citing *Sempier v. Johnson & Higgins*, 45 F.3d 724, 729 (3d Cir. 1995)). In making this determination, this Court must consider the plaintiff's "level of education, special training or certification required, amount of relevant experience required, and type of experience required to be considered for the position." *Robinson*, 2009 U.S. Dist. LEXIS 23423, at *31. Susko pleads that she possesses over fifteen years of experience in client facing account management, as an account executive specializing in digital marketing, and that she has held account management and account consulting positions for her entire professional career. Am.

Compl. 3. Susko's allegations are sufficient to show her qualification for the Account Executive position. As a result, the second element of the *McDonnell Douglas* standard is met.

Third, Susko must assert that Weidenhammer took an adverse employment action against her. *See McDonnell Douglas Corp.*, 411 U.S. at 802. It is undisputed that Weidenhammer terminated Susko's employment. Courts have long recognized that the termination of one's employment is, by definition, an adverse employment action. *See Aguiar v. Morgan Corp.*, 27 F. App'x 110, 112 (3d Cir. 2002) (holding that termination of employment fulfills the second prong of the prima facie case for a discrimination claim); *Larochelle v. Wilmac Corp.*, 210 F. Supp. 3d 658, 691 (E.D. Pa. 2016) (holding that termination constitutes an adverse employment action for purposes of a Title VII discrimination claim). Thus, the third element of the *McDonnell Douglas* standard is met.

Fourth, Susko must allege sufficient facts to establish that the adverse action occurred under circumstances giving rise to an inference of discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802. "[A]n inference could be supported in a number of ways, including, but not limited to, comparator evidence, evidence of similar . . . discrimination of other employees, or direct evidence of discrimination from statements or actions by her supervisors." *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 703 (3d Cir. 2010) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–12 (2002)). Comparator evidence consists of allegations that "similarly situated individuals who were not members of the protected class were more favorably treated than the plaintiff." *Mitchell v. City of Pittsburgh*, 995 F. Supp. 2d 420, 430 (W.D. Pa. 2014); *see also Jones v. Sch. Dist. of Phila.,* 198 F.3d 403, 413 (3d Cir. 1999) (holding that the circumstances giving rise to an inference of discrimination can be raised by establishing that an employer has treated more favorably similarly situated persons not within the protected class).

The Third Circuit has held that "comparator employees must be similarly situated in all relevant respects." *Doe v. Apria Healthcare Grp. Inc.*, 97 F. Supp. 3d 638, 645 (E.D. Pa. 2015) (citing *Wilcher v. Postmaster Gen.*, 441 Fed. Appx. 879, 881–82 (3d Cir. 2011)). In her Amended Complaint, Susko brings forward several comparators. Yet in each case Susko fails to plead sufficient facts to support the legal conclusion that these individuals are "similarly situated in all relevant respects." *Id.*

As to the first alleged comparators, Susko lists several male account executives concluding that they are similarly situated to herself. The only facts plead to support Susko's conclusion are the individuals' names and their shared job title of account executive. These facts are not enough to allege that Susko is similarly situated in all relevant respects. *See Cagnetti v. Juniper Vill. at Bensalem Operations*, No. CV 18-5121, 2020 WL 4039027, at *10 (E.D. Pa. July 17, 2020) ("The fact that two employees share a job title is insufficient by itself to support an inference that they are suitable comparators." (citations omitted)); *See also Fisher v. Catholic Soc. Servs.*, No. 18-CV-04653, 2019 U.S. Dist. LEXIS 133322, at *14-15 (E.D. Pa. Aug. 7, 2019) (dismissing the plaintiff's discrimination claim because "bald statements" that similarly situated employees were treated differently "without identifying any comparators or how they were similarly situated is exactly a '[t]hreadbare recital[] of the elements of a cause of action' that Iqbal repudiates" (quoting *Iqbal*, 556 U.S. at 678)).

Next, Susko tries to use Henne, a recently hired male account executive, as a comparator. Susko claims that the disparity in pay between herself and Henne is comparator evidence of sex discrimination.[4] Susko fails to assert enough facts to establish that Henne and

---

[4]     Susko claims Weidenhammer pays Henne $65,000 per year to be Account Executive Position while Susko was only paid $50,000 per year. Am. Compl. 7.

herself are similarly situated in all relevant respects. Susko does not mention, for example, Henne's education, prior work experience, specialized training, or any other factors as compared to her own which would support her claim that Henne is a suitable comparator regarding pay. *See Cagnetti*, 2020 WL 4039027, at *10 (citing *Herster v. Bd. of Supervisors of Louisiana State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018) ("A variety of factors are considered when determining whether a comparator is similarly situated, including job responsibility, experience, and qualifications.")).

Lastly, Susko points to Brian Williams, a newly hired male account executive, as a comparator. To support her conclusion that Williams is a comparator, Susko states that herself and Williams both have the same title, work for the same supervisor, have similar job responsibilities, operate within the same sales region, both have similar sales figures, and both have generally positive feedback. Based on the information above, Susko appears to have alleged enough to classify Williams as a comparator. *See Debra Pepe v. UPMC Williamsport & UPMC Susquehanna*, No. 4:20-CV-02087, 2021 WL 2156741, at *4 (M.D. Pa. May 27, 2021) ("Factors relevant to the [comparator] analysis are whether the employees dealt with the same supervisor, were subject to the same standards, shared similar job responsibilities and the nature of the misconduct.").[5] However, to the extent that Susko seeks to use Williams to establish an inference of discrimination from the allocation of sales territories, the absence of any allegations as to, for example, her sales knowledge and/or prior work experience compared to his is fatal because she has included allegations that would explain the reallocation based on non-

---

[5]     *See also Doe*, 97 F. Supp. 3d at 645 (holding that employees are similarly situated in all relevant respects if they have the same job or responsibilities, shared the same supervisor, or had their employment status determined by the same person, and have essentially comparable violation histories (citing *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009))).

discriminatory grounds.  Specifically, Susko has pled facts which distinguish herself from Williams with respect to conduct and performance. Susko stated in her Amended Complaint that her supervisors had "expressed dissatisfaction with Susko's sales performance," while Williams has received only positive feedback. Am. Compl. 5-6. Courts have held that if the "difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer," the employees are not similarly situated for the purposes of an employment discrimination analysis. *Doe*, 97 F. Supp. 3d at 645 (citing *Lee*, 574 F.3d at 260). Accordingly, Williams is not a sufficient comparator to give rise to an inference of discrimination.

Along with comparator evidence, Susko brings forth several incidents which she alleges involved discriminatory conduct including: (1) a "Commercial Kickoff" event which featured presentations including sports analogies and pictures of male athletes, (2) a presentation where the Weidenhammer's male Development Lead went through a presentation he had created with help from a female designer during which the female designer was instructed to "work the clicker" while the male Development Lead presented the content of the presentation to the sales force, (3) stories Susko has heard about discrimination against female employees before Susko joined the company, and (4) conversations with other employees involving her rocky relationship with her supervisor Farro. None of these incidents, however, relate to any direct discrimination against Susko and, despite the hearsay opinions of third persons, the other incidents are equally explained with non-discriminatory reasons.  In light of the fact that there was also a non-discriminatory reason for the alleged adverse action taken against Susko, she has not alleged sufficient facts from which this Court could infer that she was being treated different or that she was discriminated against based on her gender. *See Golod*, 403 F. App'x at 703.

061521

For all these reasons, Susko has failed to plead facts sufficient to state a discrimination claim. The claim is dismissed without prejudice and with leave to amend. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that "even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile").

### B.   Title VII – Retaliation

To successfully bring a claim for retaliation, Susko must allege enough facts to establish a prima facie case. To do this, three elements must be met. *See Salvato*, 658 F. App'x at 56 (quoting *Nelson*, 51 F.3d at 386). Here, it is undisputed by the parties that Susko suffered an adverse employment action. *See* Am. Compl. 9; Mot. 4. Thus, the Court will focus its analysis on the first and third element of the retaliation prima facie case.

#### 1.   Protected Conduct

Under the first element of a prima facie case of retaliation, Susko must allege that she engaged in protected conduct. *See Salvato*, 658 F. App'x at 56 (quoting *Nelson*, 51 F.3d at 386). The Third Circuit has explained that "a general complaint of unfair treatment does not translate into a charge of illegal discrimination and is not protected conduct under Title VII." *Slagle v. Cty. of Clarion*, 435 F.3d 262, 265 (3d Cir. 2006) (citing *Barber*, 68 F.3d at 702). For a plaintiff's conduct to be protected, she must specifically allege discrimination in either a verbal or written report. *LeBlanc*, 2015 WL 144135, at *14 (citing *Barber*, 68 F.3d at 702). Susko claims to have been engaged in protected conduct two times: (1) when she spoke to her direct supervisor about unfair treatment, and (2) when she filed a formal complaint with Weidenhammer's Human Resources Department claiming discrimination based on sex.

Susko's conversation with her supervisor does not meet the requirements to be protected conduct because she never mentioned discrimination. During these conversations, Susko only expressed concern that she was being treated unfairly "based upon the work she was doing and her expertise" and "in terms of compensation provided to Williams," her coworker. Am. Compl. 8. At no point in her conversations with her supervisor did she specifically allege discrimination based on sex. Rather, Susko made general complaints of unfair treatment. Susko therefore did not engage in protected conduct when speaking with her supervisor.

On the other hand, Susko's complaint filed with Weidenhammer's Human Resources Department on September 7, 2018, does meet the requirements to be protected conducted. When speaking with Human Resources, Susko filed a "formal complaint of sex discrimination" which directly alleged that her supervisor treated similarly situated male employees preferentially. *Id.* This complaint falls within the court's definition of protected conducted under Title VII. *See e.g. Alderfer v. Nibco Inc.*, No. 98–6654, 1999 U.S. Dist. LEXIS 16083, *2 (E.D. Pa. Oct. 19, 1999) (finding that plaintiff had engaged in protected activity where she called the employer's human resources manager and complained that her supervisor had made "humiliating sexual comments" to or about her); *see also Phillips v. Donahoe*, No. CIV.A. 12-410, 2013 WL 5963121, at *2 (W.D. Pa. 2013) (holding that a formal complaint of discrimination is protected conducted for purposes of a retaliation claim). As a result, the first element of the prima facie case is met.

### 2.  Causal Connection

Susko must next show a causal connection between Title VII protected conduct and an adverse employment action. See *Salvato*, 658 F. App'x at 56 (quoting *Nelson*, 51 F.3d at 386). To do this, Susko must first assert that the relevant actor at Weidenhammer knew about her protected conduct before she was fired on September 19, 2018. *Seybert v. Int'l Grp., Inc.*, No.

CIV.A. 07-3333, 2009 WL 722291, at *24 (E.D. Pa. 2009) (citing *Iver v. Everson*, 382 F. Supp. 2d 749, 758 (E.D. Pa. 2005)). The Third Circuit has expressly recognized the requirement of knowledge by the decision-maker in retaliation cases. *Ambrose v. Township of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002) ("It is only intuitive that for protected conduct to be a substantial or motiving factor in a decision, the decisionmakers must be aware of the protected conduct."). This Court has called this knowledge a "gateway requirement" which must be met before a showing of causal connection can be established. *Kortyna v. Lafayette Coll.*, No. 15-4625, 2017 U.S. Dist. LEXIS 44083, at *47 (E.D. Pa. Mar. 27, 2017) (citing *Ambrose*, 303 F.3d at 493).

Susko has failed to plead sufficient facts in her Amended Complaint to fulfill this "gateway requirement." Nowhere does Susko allege that Farro was aware of her formal complaint made to Human Resources. Susko states that as late as two days before her termination Human Resources "had not had time to begin" an investigation. Am. Compl. 9. Simply put, Susko has not alleged enough facts from which this Court can reasonably infer that Farro knew about Susko's protected conduct before terminating her employment. *See Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 702–03 (3d Cir. 2010) (affirming the District Court's dismissal of plaintiff's discrimination claim because she failed to plead facts sufficient to establish a causal connection). As a result, this element of the prima facie case is not met.

Susko has failed to allege enough to establish a causal connection between her protected conduct and firing. For this reason, Susko has failed to plead facts sufficient to support her retaliation claim.  This count is dismissed without prejudice and with leave to amend.  *See Alston*, 363 F.3d at 235.

**V.    CONCLUSION**

Susko failed to allege sufficient facts to state a claim for gender discrimination. The third-party opinions about Weidenhammer's employment practices to which she refers do not give rise to an inference of discrimination, nor do the specific incidents Susko experienced because they are equally explained based on non-discriminatory reasons.  Additionally, there are insufficient allegations about the purported comparators from which this Court can determine that they are indeed similarly situated.  Susko also failed to allege sufficient facts to assert a prima facie case for retaliation because she did not plead enough facts to show that the decisionmaker knew about her protected conduct when he fired her. The Motion to Dismiss is granted, but Susko is given leave to file an amended complaint to cure the deficiencies discussed herein.

A separate order follows.


BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge